IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Tomekia R. Means,<br><br>                Plaintiff,<br><br>vs.<br><br>South Carolina Department of Social Services,<br><br>                Defendant. | Civil Action No. 6:15-4104-HMH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 44) and the plaintiff's motion for summary judgment (doc. 41). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

## BACKGROUND

In her complaint, which was removed by the defendant to this court from the Laurens County Court of Common Pleas on October 2, 2015, the plaintiff alleges that the defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA") by demoting her because of status as a qualified person with a disability, her history of disability, and/or being regarded as having a disability; by denying her reasonable accommodation; and by denying her the position of Job Developer because of her disability or perceived disability (doc. 1-1 at 4-11). She seeks back pay, front pay, lost benefits of employment, compensatory damages, punitive damages, and attorney's fees and costs (*id.* at 11). At the time of the filing of her complaint, the plaintiff was represented by counsel. On June 10, 2016, the undersigned granted the plaintiff's counsel's motion to withdraw as

attorney (doc. 21) and granted the plaintiff time to retain counsel through July 29, 2016 (doc. 28). The plaintiff did not retain counsel and is proceeding *pro se*.

On September 6, 2016, the plaintiff filed a motion for summary judgment (doc. 41). On September 13, 2016, the defendant filed a response to the motion (doc. 43) and its own motion for summary judgment (doc. 44). On September 14, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if she failed to respond adequately (doc. 46). On October 19, 2016, the plaintiff filed her response in opposition (doc. 51), and the defendant filed a reply on October 27, 2016 (doc. 53).

## **FACTS PRESENTED**

The defendant South Carolina Department of Social Services ("DSS") hired the plaintiff in its Spartanburg County office in early 2006 (doc. 1-1 at 5). On December 2, 2011, the defendant granted the plaintiff's request to transfer to the Laurens County DSS office (*id.*). The plaintiff was employed as a Human Services Specialist II within the Laurens County DSS Office's Foster Care division (*id.*). Her job duties included performing specialized case management in child welfare services, including the areas of foster care, foster parent recruitment and licensure, and treatment services for children and families (doc. 44-3 at 3-4). The plaintiff was required – among other duties – to perform home studies to determine a family's fitness to provide foster care, remove children from abusive or neglectful homes, and to make emergency placements of foster children after hours when a disruption occurred (*id.*). The position required the plaintiff to be able to drive a motor vehicle and to lift up to 30 pounds (*id.*). These requirements exist because a Human Services Specialist II in the Foster Care division will often have to carry a young child and because the position requires traveling 30 minutes or more at a time to perform home visits of foster families and children (doc. 44-2, Byron Dendy aff. ¶ 1). A Human Services Specialist II in the Foster Care division may be called upon at any time to transport a child who may be in a dangerous or abusive situation (*id*. ¶ 2).

On November 6, 2012, the plaintiff was injured by a minor child in the care of the defendant (doc. 44-3 at 5). Six days later, the plaintiff's physician released her to return to work with restrictions, including no lifting over ten pounds, no operating machinery while taking medication, and limited use of her neck (*id.* at 6). On December 5, 2012, the plaintiff was in a car accident while driving a DSS vehicle (*id.* at 7). The plaintiff filed a workers' compensation claim and was approved by the defendant for leave under the Family and Medical Leave Act ("FMLA") (*id.* at 8). On December 6, 2012, the plaintiff began a leave of absence from DSS that would continue for over eight months.

On April 18, 2013, after the plaintiff had been on unpaid leave for over three months, Laurens County DSS Director Byron Dendy wrote the plaintiff to notify her that her FMLA leave was exhausted as of March 30, 2013, but she could continue to take leave under DSS policy until July 8, 2013, if necessary (doc. 44-3 at 9-11). Dendy also informed the plaintiff that she could request additional leave time if she needed it, but approval of such extended leave was at the Agency Director's discretion (*id*. at 11). On May 16, 2013, the plaintiff's physician submitted a note stating that the plaintiff was being treated for symptoms related to a closed head injury that included a balance disorder, neck pain, and recurrent headaches (*id.* at 12). The plaintiff's physician stated that the plaintiff could not return to work at that time, but that he hoped she would be able to return to work by August 16, 2013 (*id*.). On June 6, 2013, Dendy wrote to DSS director Lillian Koller to request an extension of the plaintiff's leave until August 16, 2013 (*id.* at 13). On June 12, 2013, Koller wrote to the plaintiff and informed her that her extended leave had been approved until August 16, 2013 (*id.* at 14).

The plaintiff returned to work on August 16, 2013 (doc. 44-3 at 15). However, the plaintiff's physician placed her under multiple restrictions upon her return to work, including no lifting over ten pounds, no driving for longer than 30 minutes at one time, and no transporting children (*id.* at 16). The plaintiff also had to be absent from work twice a week for physical therapy (*id.* at 17). As noted above, the plaintiff's position prior to her injury as a Human Services Specialist II required her to lift up to 30 pounds and required

3

her to routinely drive over 30 minutes at a time in order to perform home visits in all the areas for which Laurens County DSS is responsible (*id.* at 3-4, 18-19). Because the plaintiff could not perform the duties of her position upon her return to work, she was permitted to "perform a light duty job of assisting the administrative staff in [DSS's] reception area and working a reduced work schedule of only three days per week" (*id.* at 18-19). The plaintiff was paid her regular Human Services Specialist II salary during the five months she worked "light duty."

On December 30, 2013, the plaintiff's physician informed DSS that the plaintiff would need to work "light duty" – including not lifting more than ten pounds and not driving more than 30 minutes at one time – "indefinitely"[1] (doc. 44-3 at 20). On January 16, 2014,[2] Dendy wrote to inform the plaintiff that the defendant had to fill her Human Services Specialist II position and needed to place the plaintiff in an actual position, rather than merely having her work "light duty" assisting the administrative staff in the reception area (doc. 44-3 at 18-19) Dendy stated that the only open position within Laurens County DSS that could accommodate the plaintiff's indefinite restrictions was a Human Services Specialist I position within the Economic Services area (*id.*). Dendy informed the plaintiff that the position would be a demotion and that the position paid 15 percent less than the plaintiff's Human Services Specialist II position. Dendy gave the plaintiff until January 24, 2014 to accept the position (*id.*)

On January 24, 2014, the plaintiff wrote an email to Dendy wherein she confirmed that her "medical restrictions disallow [her] ability to fully complete the required duties [of her Human Services Specialist II position]" (doc. 44-3 at 22-23). The plaintiff stated that under the defendant's extended illness or disability policy she should continue to be paid the same as her Human Services Specialist II position following her reassignment

---

[1] The plaintiff's physician later amended her driving restriction to up to one hour. However, she remains restricted from lifting more than ten pounds and from transporting children (doc. 44-3 at 21).

[2] Dendy's correspondence twice incorrectly lists the year as 2013.

but concluded, "With all this being said, I am willing to take a voluntary demotion with the Job title; however, I feel my current salary should remain the same" (*id.*)  On February 5, 2014, Dendy e-mailed the plaintiff a job description for the position in question along with the new salary amount of $26,758.85, which he stated was a 15 percent reduction in the plaintiff's salary (*id.* at 24). The plaintiff was given 24 hours to accept or decline the position (*id.*). In another email in response to questions from the plaintiff, Dendy stated that the transition would take place upon the plaintiff's acceptance of the position, and her pay would not change until she officially moved into the new position (doc. 51-3 at 18).

On February 6, 2014, the plaintiff emailed Dendy to inquire as to a Program Coordinator II (Job Developer) position that had just been posted (doc. 44-3 at 25). The plaintiff noted that the position was within her driving restrictions (*id.*). Dendy replied that he was "not inclined" to offer her the position at that time, but that she could apply for it (*id.*). The plaintiff replied that she would apply for the Job Developer position, but that she had reluctantly made "the decision to accept the position you have offered" (*id.* at 26). According to a Human Resources Personnel Action Form, the plaintiff was demoted to the Human Services Specialist I position effective March 2, 2014 (*id.* at 27).[3] The plaintiff maintains that the transition into the new position did not take place officially until July 2, 2016 (doc. 51 at 14).

As noted above, on February 6, 2014, the Laurens County DSS office posted a vacancy for a Program Coordinator II (Job Developer) position (doc. 44-3 at 28-31). The position involved developing and implementing marketing strategies, establishing relationships with local businesses, establishing and maintaining employer banks, interviewing and assessing clients for appropriate job placement, and compiling statistics (*id.* at 32-33). The plaintiff applied for the position and was interviewed on March 3, 2014 (*id.* at 34-35). The plaintiff notes that she was one of only four of the 57 applicants for the

---

[3] The defendant states in its memorandum that the effective date of the demotion was February 20, 2014 (doc. 44-1 at 1). However, the cited document states that the effective date of the personnel action was March 2, 2014; the document was signed by Dendy on February 20, 2014 (doc. 44-3 at 27).

5

job who were given interviews (doc. 51 at 16; *see* doc. 51-4 at 9). Dendy – who participated in the interview and was one of the decision-makers as to who was hired – believed the plaintiff had very little if any experience in the relevant area (doc. 44-2, Dendy aff. ¶¶ 3-5) The successful applicant – Valerie Thacker – had been employed within DSS's Economic Services division since 2006 and had evaluated whether individuals had complied with work programs, as well as determined eligibility for various programs (doc. 44-3 at 36-37). Dendy states in his affidavit that he chose to hire Thacker because she was the most qualified applicant (doc. 44-2, Dendy aff. ¶ 6). The plaintiff states that, of the 57 applicants, the person who was most qualified for the job was Joy Lindsey, the County's previous Job Developer, rather than Thacker (doc. 51 at 16; *see* doc. 51-4 at 9).

The plaintiff filed an administrative charge of disability discrimination on March 24, 2014, alleging that her pay was reduced and she was denied a promotion for discriminatory reasons (doc. 44-3 at 38). The South Carolina Human Affairs Commission ("SHAC") investigated the plaintiff's charge and, on March 25, 2015, issued a "no cause" determination (*id.* at 39). In SHAC's exit correspondence to the plaintiff, the investigator stated that the plaintiff "failed to meet the Model of Proof as she was accommodated by being reassigned, as were other similarly situated employees" (*id.* at 40). The Equal Employment Opportunity Commission ("EEOC") adopted SHAC's determination effective May 11, 2015 (*id.* at 41).

## APPLICABLE LAW AND ANALYSIS

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Eleventh Amendment Immunity*

Here, the plaintiff's only cause of action is brought under Title I of the ADA (doc. 1-1 at 4, 10-11), which prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [a] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA also makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). A "qualified individual" is "an

individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8).

The defendant argues that summary judgment should be granted as the Eleventh Amendment to the United States Constitution bars the plaintiff's cause of action under Title I of the ADA. The undersigned agrees.

The Eleventh Amendment provides immunity to nonconsenting states and their agencies from suits by private citizens in federal court. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). The plaintiff acknowledges in her complaint that the defendant is a South Carolina state agency (doc. 1-1 at 4). *See also Jackson v. Hunt*, C.A. No. 1:10-241-RMG, 2011 WL 43641, at *1 (D.S.C. Jan. 6, 2011) ("DSS is an agency of the State of South Carolina and functions as an arm of the state.") (citing *Coffin v. S.C. Dep't of Soc. Serv.*, 562 F.Supp. 579, 583–585 (D.S.C.1983)). However, Eleventh Amendment immunity is not absolute, and three exceptions exist to this immunity:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. . . . Third, [a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court.

*Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012) (alteration in original) (internal quotation marks, citations, and footnote omitted).

In *Board of Trustees of the Univ. of Al. v. Garrett*, 531 U.S. 356, 363-74 (2001), the United States Supreme Court held that Congress had not validly abrogated Eleventh Amendment immunity in the passage of the ADA. *See Jackson v. S.C. Dep't of of Disabilities and Special Needs*, C.A. No. 4:15-5033-BHH-KDW, 2016 WL 3647981, at *2 (D.S.C. June 15, 2016) (recommending dismissal of ADA Title I claim based on Eleventh Amendment immunity), *R&R adopted by* 2016 WL 3633660 (D.S.C. July 7, 2016); *Ramos v. Berkeley County*, C.A. No. 2:11-3379-SB, 2012 WL 5292895 (D.S.C. Oct. 25, 2012) (dismissing ADA Title I claim based on Eleventh Amendment immunity).

As the Supreme Court has conclusively held that Congress did not validly abrogate the State's immunity from suit under the Eleventh Amendment for claims seeking damages under Title I of the ADA, the first exception to Eleventh Amendment immunity does not exist. Further, as the plaintiff does not seek prospective injunctive relief, the second exception does not apply. *See Lee-Thomas*, 666 F.3d at 249.

Lastly, the court must consider whether the State has waived its Eleventh Amendment immunity from suit in federal court. *See id.* Notably, the plaintiff filed this action in state court, and it was removed to this federal district court *by the defendant* (*see* doc. 1-1). A state's voluntary appearance in federal court waives sovereign immunity to claims where a state has consented to suit in its own courts for such claims. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002). However, here, since the State of South Carolina has not waived its immunity from suit in state court for ADA claims, the defendant's voluntary removal of this case to federal court has not effected a waiver of the State's immunity from suit for that claim. *Ramos v. Berkeley County*, C.A. No. 2:11-3379-SB-BM, 2012 WL 5292899, at *3 (D.S.C. Aug. 7, 2012) (finding defendant's removal of case to federal court did not waive Eleventh Amendment immunity from suit on ADA claim), *R&R adopted by* 2012 WL 5292895 (D.S.C. Oct. 25, 2012). *See Stewart v. North Carolina*, 393 F.3d 484, 489-90 (4th Cir.2005) (finding no waiver where state has not consented to suit in its own courts for such claims). Furthermore, the defendant's failure to raise Eleventh Amendment immunity as an affirmative defense in its answer does not waive the immunity. *Cockfield v. S.C. Dept. of Pub. Safety*, C.A. No. 4:05-277, 2007 WL 954131, at *14 (D.S.C. Mar. 27, 2007) ("[E]ven though it is possible for Defendant to waive Eleventh Amendment immunity, it has not done so by raising it for the first time in its Motion for Summary Judgment.") (citing *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir.2005)).

As none of the exceptions to Eleventh Amendment immunity apply, the defendant is immune from suit in this court on the plaintiff's Title I ADA claim. Accordingly, summary judgment should be granted to the defendant.[4]

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted (doc. 44) and the plaintiff's motion for summary judgment (doc. 41) be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

April 27, 2017
Greenville, South Carolina

---

[4] The defendant also argues that the plaintiff cannot prove her ADA claim. As the undersigned finds that the case should be dismissed based upon Eleventh Amendment immunity, the defendant's remaining arguments (doc. 44-1 at 8-14) will not be addressed.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).